We'll call the next case Scheing v. Fountain Mr. DiGiacomo? DiGiacomo, Your Honor. Good morning. May I reserve two minutes for rebuttal? Yes. Thank you. May it please the Court, my name is Anthony DiGiacomo. I represent the Appellant Plaintiff Hans Scheing in this matter. Your Honors, respectfully, we believe that the District Court applied an evidentiary standard akin to that of a rule for summary judgment. Rather than the plausibility standard that should have been appropriate. Your Honors, I'd like to turn your attention to this Court's ruling in Connolly v. Main Construction Company. Right, and we're all familiar with it. And one of the first things that Connolly says is, Conclusory allegations are disregarded. Right? That's one of the key features. One of the challenges that we've got in this case is, we've got a brief, we've got a complaint, heavy on conclusory allegations. And then we've got repeated efforts by the District Court to get a more complete complaint, giving leave to amend a couple of times so that we're on the second minute complaint, before the Court finally dismisses with prejudice. And then we have a brief, which doesn't engage until like page 25 or 26 with the facts, and then does so in a very abrupt and cursory manner. So, since you point to Connolly, and Connolly tells us, ignore conclusory allegations, how are we to address your client's position when conclusory is what's coming at us in a rush, it seems like, Mr. Giacomo? Yes, Your Honor. We believe that there are sufficient facts there under the appropriate standard to establish the question of whether or not there was a reasonable expectation that discovery would provide evidence of the remaining elements. In the lower court, the District Court decided that, after parsing out the elements that are necessary, they turn to the summary judgment standard. And in particular, I'd like to point you to where the Court does that. Well, actually, let me point you to something to answer this. Do you agree that a lack of probable cause is a key element of a 1983 malicious prosecution claim? Your Honor, I'm sorry, I cannot hear you. Do you agree that a lack of probable cause is a key element that has to be shown, it's one of the five elements that has to be shown, to make out a 1983 malicious prosecution claim under the Fourth Amendment, right? Yes, Your Honor. Okay, so part of what had to have been pled had to be some facts or something that makes it plausible that there was a lack of probable cause, right? Respectfully, Your Honor, I would actually disagree. You don't have to plead plausibly facts that give rise to every element of your claim? No, Your Honor, I do not believe so. Really? Yes, I believe in commonly that this Court says a point-by-point analysis of each element is inappropriate, that a prima facie case at the pleading stage is not required. You have to plead your claim with plausibility. Yes, absolutely, Your Honor. Okay, so if you don't plead some facts that give rise to a plausible conclusion that that element of the claim is in there, how can you plead a claim plausibly if you don't have facts in that would reasonably lead one to conclude that the necessary elements are present? Your Honor, there is a distinction that I think we're both towing with. What is required by Connolly is that there's a plausibility, factual plausibility, putting aside conclusions, bringing inferences in favor of the plaintiff, that would establish that discovery will reveal the evidence. And, Your Honor, because this has been, since Iqbal and Twanley, such a changing question, I really would like to read to you just two lines from Connolly. Namely that, and this is on page 8 of Connolly, Your Honor, a point-by-point consideration of the elements of a prima facie case were not required. Instead, a complaint need not establish a prima facie case to survive a motion to dismiss. A prima facie case is an evidentiary standard, not a pleading requirement. It goes on to say, at the early stage of proceedings, it is enough for Connolly to allege sufficient facts to raise a reasonable expectation that discovery will uncover proofs of her claims. At this point, what was pled in the complaint is more or less the following concerning probable cause. One, that there was an intent by the defendants to defame and had in the past defamed the company because of the son's competing aseptic system. Now, there's the question. How do we distinguish between something that's purely conclusory and something that isn't? Because that's a bald assertion that Fountain was motivated by his colleague's son's business interest. It's a factual assertion. If there was a defamation claim, I would suggest that it was a conclusionary. But how can there be a connection from that? How can you imagine that a law enforcement officer is trying to help other officers in debt rack in their scheme if there's no explanation about how this could come about? Your Honor, let me go back to the time of the arrest. And that might be a good beginning point to highlight why this malice is assumed. At the time of arrest, all the officer knew was that, A, the complainant had said that a soil test was performed on her property. When he went to the house, it was pled in the amended complaint that he saw the results of the digging of an industrial backhoe. He couldn't have missed it. The holes were huge. So he knows work is done. He knows work was done three years before. No, Your Honor. I mean, three months before. Yes, Your Honor. And because of his experience with this department, he should also know two things. One, that the soil testing takes months to return. And two, when the soil test thawed up, a member of dig rack was there, the soil scientist. So it is pled that they had knowledge of the soil testing. They had not received the results. But here's why the nexus of timing is so important. When the arrest occurred, he has the information that the soil testing was done, but not the results or the application. The application was already submitted to the department. They had already received it, stamped it, approved four days prior to the arrest. When my client is brought in for the arrest, he tells the officer that you already have evidence with your department that this isn't true, that I've been doing work, I haven't abandoned it. Please call them. I need to follow up on that because I have a specific objection that seems to relate to what you're telling us here. The plaintiffs allege that, and this is a quote, Fountain, under the direction of Shippens, Whitman, and Albanese, knowingly and deliberately and or with reckless disregard for the truth, omitted material facts from his application for an arrest warrant. Specifically, and this is a quote, the defendants had in their possession the soil test results, which were exonerating and material evidence. That's paragraph 29. But this is in contradiction, Mr. DiGiacomo, to the other allegations of the complaint that Officer Fountain filed an arrest warrant for Hans Shane on October 14, 2013, and that the soil report was sent to the Department of Natural Resources for approval on October 16. You can't square those allegations. No, Your Honor. It was an awfully pled. They had the soil. It was what? They had the soil testing knowledge. But they didn't have the results. They did not have the results. At the time, the warrant was defeated. But the warrant says that no work on the property was done. They had information at that time. In fact, two months prior, the work had been done. The initial dating that requires a soil scientist and industrial backup were on property the day the contract was signed. It takes several months, and the complainant was informed it takes several months. That complainant told the arresting officer that the soil testing was done. So the warrant is incorrect in that matter. But is it the case that the warrant is integral to the complaint? I forget. I'm sorry. Is it the case that the warrant is integral to the complaint? The district court said, I can look to the warrant, not for the truth of the matters asserted in there, but because the plaintiff asserts that things were left out of the warrant deliberately and that that constitutes malice, the warrant is integral to the complaint. So on this motion to dismiss, is the district court right we can look to the warrant? Yes, Your Honor. Okay. Now, shifting gears slightly, but this is of high significance. The court, this court, in the Robinson case, as pointed out in your opponent's brief, instructed the firm, and I don't know whether you're part of the same firm or not, I assume you are. I am. not to file a brief devoid of engaging with the facts, a general disquisition about Twombly-Nickball, not to do that again in a 12B6 case because it's just not helpful. And yet we get almost the same brief in this case, and the only improvement, if one can view it that way, is that when you get to page 26, there is at least at that point some reference to the second amended complaint in the first and second full paragraphs on that page where the court, excuse me, where your firm does at least say that the district court was incorrect in deeming the grand jury's indictment dispositive because, quote, the second amended complaint plausibly pleads defendant's collective ulterior motive. And then it goes on to say it specifically regards the warrant submission of particular facts. That, in the whole brief, it really seems like the one engagement with the facts again. So my question to you is, why aren't we in the same position we were in in Robinson or in Russell where we're getting, once again, a failure to engage with the facts? A failure to present facts to the court. Your Honor, and just to add this to your response, what's been said with respect to Albany, Shepparton, and Woodman that would plausibly state facts showing that they procured this action by Mr. Fountain? I mean, I don't see that. Go ahead. You've got questions from the panel. Yeah, take any one of the three. I'll take the last one. Your Honor, in order, respectfully, we would simply suggest that we went beyond that of Robinson. The Robinson opinion simply put forth the Iqbal-Connolly comparison, and this was our attempt to go beyond by including Connolly, engaging the opinion of the court, and putting forward some analysis. Even with Connolly, you're citing to his law and saying, and the district court didn't do it. It doesn't engage with the facts until, like I said, and I don't think I misread it, there are mentions of the second-minute complaint earlier in the brief, but there's no engagement with the facts until page 26, and I gave you the two mentions of it. This is a case that is about whether the district court was right in saying you were too conclusory and pitching it out, and yet we don't get in the briefing until page 26, two passing references to the second-minute complaint. How can we fault the district court when there's not a level of engagement that deals with this problem? Your Honor, I would suggest that by looking at the district court's opinion and the complaint, it is clear that the district court applied an evidentiary standard. Throughout the opinion, the cases cited for the failures in the complaint are cited to motion for summary judgment rulings. If that's true, wasn't it incumbent on the firm to make that case in the written submission given to us so that it's not to us to tease out where we think your issues are or to wait to get into court and hear this from the podium, but to have it in the brief? In short, I put it to you again, how are we in a materially different place than we were in Robinson? Your Honor, as a comparison to Robinson, all I can tell you is that we went beyond it. All right. I'd like to make your... Am I out of time, Your Honor? You are out of time, but if you want to take another minute to make a wind-up point before we have you up for rebuttal, I'll give you a chance to do that. Your Honor, the key to this, I believe, is at the time of arrest. Exhaustive investigation was not necessary. All that was needed to be done was to pick up the phone and call his own office to obtain the evidence. That, in and of itself, suggests that probable cause was not being solved when he said that there was some type of malice which was put in the complaint. All right. Thank you, Your Honor. Thank you, Mr. Giacomo. Mr. Hamlin. Good morning, Your Honor. My name is Joe Hamlin from the Delaware Department of Justice on behalf of the police, Casey Fountain, and the three other officers of the Delaware Department of Natural Resources and Environmental Control. This isn't a case where we're quibbling with a plaintiff not just pleading sufficient facts under ICPAW. The actual facts pled established for themselves probable cause here, Well, Mr. Hamlin, why don't you go straight to Mr. Giacomo's point, which is, in the complaint it is pled that, first, there is a motive, that is to support a member of the team's family business interests, and, second, there was work that had been done, so it was false to say there had been no work done. There was, like he said, the Bakawan site, the soil samples taken, the soil samples turned in. Those things are pled in the complaint, and that is enough to at least raise an inference that there was something going on here other than law enforcement. There was a malicious attitude, and there was a deliberate burying of relevant facts. Why is that argument wrong? That argument is wrong because the plausibility standard is a context-specific standard that requires the court to use its judicial experience and common sense. When you look at the second amendment complaint, mind you this is the third time, as Your Honor pointed out, that the plaintiff in this case, who was represented by counsel, had opportunity to state a claim, three tries, alleges that the plaintiff entered into a contract with the elderly victim that day and performed a soil sample. The work that is not done is replacing a failing septic tank for months. So months go by. The assertion is, of course, from their side that you can't do anything until you get the soil testing back. When you say they didn't do anything for months, the argument coming from the other side is we're at the motion to dismiss stage, we're just at the pleading point here, and we pled that we took the soil samples, we turned them in, we had to wait because you can't do the work until the results of the testing come back. Ben Rick knew that. Your Honor, I think that's a great defense to the criminal charge and perhaps why the charges were dismissed twice. But the issue before the court is whether or not they stated a plausible claim of lack of probable cause. And probable cause is a fairly low standard that just requires that the plaintiff, in the context of proving lack of probable cause, that Officer Fountain had no reason to believe that a crime probably was committed. Here, there's no allegation that Fountain or any other DENREC defendant went out and investigated this case on their own and came up with this complaint. There's a crime victim reporting a crime as alleged in the second minute complaint. And under Merkle, Wheeler, Curry, at least Merkle and Wheeler, that allegation, pled by plaintiff, is sufficient to show probable cause. There's not a requirement that an investigator such as Fountain go out and perform a more exhaustive investigation. And, frankly, that's what I'm hearing today, and that's what we've heard throughout this lawsuit over the last two years, is that something more could have been done to figure out whether or not this work, action was being done. That's not what's required for probable cause, and plaintiff has pled probable cause. And my further counsel has conceded today, and I think by not bringing it up in the briefing to this court, that the court below was able to look at the warrant. And that's where your explanation is. Now, it's a little dicey because the court can't consider the truth of the matter certain in that warrant. Indeed, and in your briefing, you recount the facts with liberal citations to the warrant. How can we be paying attention to that? Well, Your Honor, the case law says that in a case such as Melissa's prosecution claim, where my opponent is saying that the warrant omits material facts, the court can look at the warrant. So I think that's appropriate to look at it. And Judge Andrews was careful to rule on footnote 8, I believe it was footnote 8, footnote 6 of the opinion, that he wasn't considering any of the facts, and he made it clear from his opinion. For the truth, because we can't do that, right? We've got to view, you know, whether it's artfully pled or inartfully pled, whether it's well briefed or it's poorly briefed, our standard of review still requires us to view the facts in the light most favorable, the pleaded facts in the light most favorable to the plaintiff, right? Right, and the pleaded facts here are that the investigating officer, through no initiation of his own, investigated a crime that was reported by an elderly crime victim, and that is sufficient to establish probable cause. And that's what's pled in the complaint. Any phone call would be enough? Elderly person calls up and says, I'm a victim, that's probable cause? She can't be forced to call him and she meets with him. And the plaintiff actually pled in previous complaints that- Multiple meetings. Multiple meetings, and then when given an opportunity to amend, to add facts, to establish the cause of action, the plaintiff took away facts. Yeah. Which I think when you're, of course, exercising its common sense in the context, it ought to consider that. So do you have some law for that, that we can go back- I don't, Your Honor. And I can argue that in a brief. The allegation that, you know, it's very conclusive, the allegation, at the end of the complaint, that this is all done to benefit Mr. Sheppard's son's business. That's it. That's the sole allegation. A conspiracy, and curiously there's not a conspiracy count, but that there's this conspiracy to benefit Mr. Sheppard's son's business, I think there needs to be something more pled for that. And that doesn't really address the probable cause argument, the fact that probable cause has been pled in a complaint that I suppose goes toward the malice element, which Judge Anger said was also lacking. Is there law for the proposition that the district court asserted, and I didn't see a cite for it, that something more is required to rebut the prima facie evidence of probable cause provided by a grand jury indictment than a mere denial, that you need some heightened evidentiary showing? Is there anything to that? Do you remember what I'm talking about? We cited to a couple of the Third Circuit's decisions on the principle that when you do have a grand jury indictment, as we do here, that the plaintiff needs to plead fraud, perjury, or some corrupt means to rebut that presumption. I believe that's the one case we cited to. How do you view the role of Sheffens, Whitman, and Alvanese in this case? They obviously can't be persons who can be said to have initiated the proceeding, correct? They're not alleged to have done so. Could they have inasmuch as they're not law enforcement officers? I don't believe so. As I understand, again, the restatement, there have to be facts alleged that they procured this prosecution by some malicious or unlawful means. There's nothing along that line of play against any of the defendants. He was found. What is your view as to these individuals, these three? I believe the district court's decision should be affirmed as totality, and if you look to just personal involvement, which is clearly lacking for those three defendants, that means found out there, obviously. But, yes, I believe the district court was correct in holding that the plaintiff has still failed after two attempts to allege personal involvement of those three individuals. The very little that's alleged against them is extremely conclusory and really just doesn't pass muster under any pleading standard, really, in particular, if all in his progeny. So, yes, we would, at a minimum, argue that those three defendants should remain dismissed, but the heart of the matter is the claim, the only claim left in the case is Melissa's prosecution claim that does not state a claim because there's not lack of probable cause plausibly pled. I'm sorry. Go ahead. Mr. Fountain, in your view, acted reasonably and did enough to establish a warrant that passes muster? Yes, Your Honor, and I believe Your Honor's question to my adversary pointed out another fatal flaw in the pleading, and that is the application was on the 14th of October, and the defendant didn't actually receive, according to the plaintiff's allegations, the test results until the 17th of October. So when you look at, and Judge Andrews, I think, noted this in a footnote in his opinion, it's not enough to allege that there wasn't a sufficient investigation, which is what this case is about, but maybe actually go one step further and acknowledge that Mr. Fountain did conduct an additional investigation by contacting Mr. Albany. He's now, you know, this is not looking at the warrant. This is in the Second Amendment complaint, and Judge Andrews, I think, appropriately says, well, he mustn't like what he determined from that investigation because plaintiffs don't allege anything with respect to what the outcome of that was. So it's not a case where they're just simply alleging not a sufficient investigation. It actually alleges something more than just speaking with the crime victim here. Mr. Sheng says in the opening brief that malice indicates a lack of probable cause. Is the lack of probable cause alone sufficient to show the fourth element of malice, or those separate things? I believe they're separate elements. I'm not aware of any authority, and I don't think anything has been cited in the briefing, that would indicate that some kind of facts pled, which I don't think are here, showing malice negates probable cause. And I'm certainly not aware of any authority on that, Your Honor. I do have to point out that we argued qualified immunity below the district court did not reach that issue. We did brief it, and I made a mistake in our answering brief, and I want to point that out to the court. We said in the answering brief that the plaintiff waived the qualified immunity argument. That's not accurate. I apologize for that. But at the very least, and I don't think the court really needs to get to this, it believes that the qualified immunity would immunize all defendants in this case if the court is to disagree with Judge Andrews' conclusion on the pleading standard. Unless the court has any other questions, I believe that addresses all the points I want to make. Okay. Thank you, Mr. Hanlon. Mr. DiGiacomo, I'll leave you on rebuttal. Thank you, Your Honor. Two points I'd like to make quickly. The first is that the qualified immunity question isn't teed up for appeal at this point. There was no cross-appeal on this matter. The second point is really going back to whether or not probable cause existed at the time of arrest. This court has made clear that exhaustive investigations cannot be required by an officer by making before an arrest occurs. That is quite reasonable. They can't go out and interview every, quote, possible witness. The question here, though, goes to the point of probable cause, which is reasonableness. Quote, when the facts and circumstances within the arresting officer's knowledge are sufficient. There's a grand jury indictment. Yes. Prima facie evidence of probable cause, right? That's unclear at this point, Your Honor. How is that unclear? Isn't our law perfectly clear that a grand jury indictment is prima facie evidence of probable cause? Deal with McKenna. What is it that makes you think that a grand jury's return of an indictment is something other than prima facie evidence of probable cause? Your Honor, I believe it's prima facie evidence in the criminal proceeding. However, it seems that the Supreme Court is moving against that in the malicious prosecution realm. Recently, the Sixth Circuit held that on their own case law. But looking at Rayburg, this is the supplemental authority yesterday that was presented. Yeah. And I looked at that, and those things are dealing with none of those seem to go to the assertion that you're making, which is that a grand jury indictment is not prima facie evidence of probable cause. Those cases, Manuel v. City of Joliet, was about whether the Fourth Amendment rights proceed past the initiation of legal process. I mean, I'm not following. I had a hard time following what the cover letter said, the reasoning of the cover letter. But I read the cases, and I didn't see anything to undermine the principle of that, which seems self-evident, that a grand jury indictment is a statement by the grand jury that there's probable cause to proceed on criminal charges. Your Honor, putting aside whether or not the supplemental authority that was given yesterday, putting that aside, and assuming that you are absolutely correct, the Supreme Court hasn't changed this at all, the grand jury indictment was based on testimony given by presumably Fountain. We would have access to that testimony and have the information and the statements made through discovery. It may be a prima facie case moving against probable cause, but that should be moving against probable cause at the motion for summary judgment stage. Here, it is alleged in the inference in the warrant, at least, which we have, is that this little testimony, no work was performed. It's presumed at the November 6th hearing, in which the trial court found that there was not probable cause, because, presumably, the inference is that Dean Rick had the report. The trial court said there wasn't probable cause? On November 6th, in the criminal conviction. Well, a dismissal of charges is not the same as a statement that there was no probable cause, is there? No, Your Honor, but the inference is they knew there was a probable cause before they went to the grand jury. They had the information, they knew the accusation or the allegation that the soil testing results were already submitted back. At that point, even if you don't believe it's reasonable that they should have called on October 21st, after the judge threw out the case, they should have looked at that point, if they hadn't somehow looked before, to see the soil results before they initiated a second criminal proceeding. Even if this court believes that the original arrest had probable cause when the warrant was initiated, I would suggest it's unreasonable to assert that there was reasonable cause at the time the second criminal proceeding was initiated. Again, I'm out of time, Your Honor. Thank you for your argument today. We appreciate counsel coming.